Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| WILLIAM VARGAS ROMÁN<br><br>Recurrente<br><br>v.<br><br>AUTORIDAD METROPOLITANA DE AUTOBUSES<br><br>Recurrido | KLRA202300296 | *Revisión Administrativa* procedente del Comité de Apelaciones de la Autoridad de Autobuses<br><br>Caso Núm. CA-2022-08-001<br><br>Sobre: Suspensión de Empleo y Sueldo |
|---|---|---|

Panel integrado por su presidente el Juez Bermúdez Torres, la Jueza Romero García y el Juez Monge Gómez.

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de enero de 2024.

I.

El 30 de agosto de 2022, el Sr. William Vargas Román, Supervisor de Servicios en el área de Programación Intermodal en la Autoridad Metropolitana de Autobuses (AMA),[1] instó *Apelación sobre Insubordinación y Amonestación Escrita* ante el Comité de Empleados Gerenciales de la Autoridad Metropolitana de Autobuses (Comité). Alegó que, el 8 de abril de 2022, su supervisora inmediata y vicepresidenta de Programación Intermodal, la Sra. Liz M. Cotto Cubero, le entregó una comunicación escrita en la que le requirió que se presentara a laborar en su horario regular el Viernes Santo, 15 de abril de 2022.

Tras ausentarse dicho día al trabajo sin llamar para excusarse, al señor Vargas Román se le radicaron dos (2) sanciones disciplinarias por los cargos de *Ausentarse sin Autorización*[2] con una

---

[1] Dicho puesto, está clasificado como uno no-exento.
[2] Art. 18, sec. 18.3.

Número Identificador

SEN2024_____

amonestación escrita a su expediente, e *Insubordinación,*[3] con la imposición de una suspensión de empleo y sueldo por treinta (30) días. El señor Vargas Román apeló ante el Comité. En su *Apelación sobre Insubordinación y Amonestación* planteó que, requerirle trabajar en un día feriado, constituía tiempo extra para lo que, de acuerdo con el Reglamento del Personal, se necesitaba la aprobación expresa del Presidente de la AMA. Arguyó que, como no medió dicha autorización expresa por escrito por parte de la Presidenta de la AMA, la orden de trabajo en tiempo extra un día feriado era nula e inexistente.

El 4 de noviembre de 2022, la AMA incoó *Solicitud de Sentencia Sumaria*, aduciendo que el señor Vargas Román desobedeció la directriz escrita notificada por su supervisora inmediata para que se presentara a laboral el viernes 15 de abril de 2022, sin mediar excusa ni justificación. El 6 de noviembre de 2022, el señor Vargas Román presentó *Oposición a Moción de Sentencia Sumaria.* Arguyó que, aunque podía ser convocado a trabajar en un día feriado, el Reglamento del Personal exigía que, para hacerlo y trabajar horas extras, debía mediar autorización previa por escrito del supervisor del empleado la cual debía ser aprobada por el Presidente de la AMA, y en este caso no la hubo.

Mediante *Resolución* emitida el 3 de mayo de 2023, notificada el 23, el Comité sostuvo las medidas disciplinarias interpuestas al señor Vargas Román. Consignó que, el 30 de marzo de 2021, la Presidenta de la AMA emitió la Directriz AMA2021-003 impartida a los Vicepresidentes, Oficiales Ejecutivos y Directores, dispositiva del procedimiento para entregar los documentos relacionados a las horas extras o tiempo extraordinario de los empleados. Concluyó que, según el Reglamento del Personal y la Directriz, el señor Vargas

---

[3] Art. 18, sec. 18, violación #24.

Román había quedado debidamente notificado de su deber de presentarse a trabajar.

El 24 de mayo de 2023, el señor Vargas Román presentó *Moción en Solicitud de Reconsideración*. Vencido el término sin que la Agencia concernida se expresara sobre la misma, el 20 de junio de 2023, el señor Vargas Román acudió ante nos. Plantea:

**Primer Error:**

ERRÓ EL COMITÉ DE APELACIONES DE LA AMA AL RESOLVER COMO VÁLIDA LA SOLICITUD AL RECURRENTE DE TRABAJAR TIEMPO EXTRA EL VIERNES SANTO DE 2022 (15 DE ABRIL DE 2022), CUANDO DICHA SOLICITUD NO ESTUVO APROBADA POR LA PRESIDENTA DE LA AMA O AUTORIDAD NOMINADORA, CONFORME LO REQUIERE EL ARTÍCULO 16.4(A) DEL REGLAMENTO DE PERSONAL DE EMPLEADOS GERENCIALES DE LA AMA Y EL MANDATO DEL ARTÍCULO 2.09(1) DE LA LEY NÚM. 26 DE 2017, CONOCIDA COMO "LEY DE CUMPLIMIENTO FISCAL CON EL PLAN FISCAL".

**Segundo Error:**

ERRÓ EL COMITÉ DE APELACIONES DE LA AMA AL VALIDAR LA SUSPENSIÓN DE EMPLEO Y SUELDO DEL RECURRENTE, POR TREINTA (30) DÍAS, COMO RESULTADO DE UNA ALEGADA "INSUBORDINACIÓN", POR AUSENTARSE A TRABAJAR TIEMPO EXTRA EL VIERNES SANTO DE 2022 (15 DE ABRIL DE 2022), CUANDO EL REQUERIMIENTO DE SU SUPERVISORA PARA QUE SE PRESENTARA A TRABAJAR DICHO TIEMPO EXTRA FUE UNO *ULTRA VIRES*, INVÁLIDO, INEFICAZ EN DERECHO, POR NO CONTAR CON LA APROBACIÓN DE LA PRESIDENTA DE LA AUTORIDAD, O AUTORIDAD NOMINADORA.

El 23 de junio de 2023, emitimos *Resolución* concediéndole término de treinta (30) días a la AMA para que expresara su posición en torno al recurso incoado. El 1 de agosto de 2023, la AMA compareció mediante *Escrito en Oposición a: Revisión de Decisión Administrativa*. Con el beneficio de la comparecencia de las partes y el Derecho, procedemos a resolver.

II.

A.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Núm. 38-2017, según enmendada,[4] establece los parámetros de nuestra facultad para revisar las decisiones emitidas por los organismos administrativos. Esta revisión judicial tiene como propósito limitar la discreción de las agencias y asegurarse de que desempeñen sus funciones conforme a la ley y de forma razonable.[5] En esta dinámica, las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que las conclusiones e interpretaciones de los organismos administrativos especializados, merecen gran deferencia.[6]

El estándar de revisión de una decisión administrativa se circunscribe a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus acciones un abuso de discreción.[7] Al desempeñar esta función revisora, estamos obligados a considerar la especialización y experiencia de la agencia, diferenciando entre las cuestiones de interpretación estatutaria, área de especialidad de los tribunales, y las cuestiones propias de la discreción o pericia administrativa.[8]

En tal sentido, estamos facultados a determinar: (1) que el remedio concedido por la agencia fue el apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta.[9] Sostendremos

---

[4] 3 LPRA § 9601 *et seq.*
[5] *Ifco Recycling* v. *De Desperdicios Sólidos*, 184 DPR 712, 743 (2012).
[6] *Capó Cruz* v. *Junta de Planificación*, 204 DPR 581, 591 (2020); *Torres Rivera* v. *Pol. de Puerto Rico*, 196 DPR 606, 626 (2016); *Batista, Nobbe* v. *Jta. Directores*, 185 DPR 206, 212 (2012); *Ifco Recycling*, 184 DPR, pág. 744.
[7] *Capó*, 204 DPR, pág. 592; *Torres*, 196 DPR, *pág.* 626; *Ifco Recycling*, 184 DPR, pág. 745 citando a *Empresas Ferrer* v. *ARPE*, 172 DPR 254, 264 (2007).
[8] *Ifco Recycling*, 84 DPR, pág. 744; *Maranello et al.* v. *OAT*, 186 DPR 780, 792 (2012) [Sentencia].
[9] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, págs. 626-627; *Pagán Santiago et al.* v. *ASR*, 185 DPR 341, 358 (2012).

las determinaciones de hecho, en tanto y en cuanto obre evidencia suficiente en el expediente de la agencia para sustentarla.[10] En cuanto a las determinaciones de Derecho, tenemos amplia facultad para desplegar nuestra función revisora, pues, estamos en igualdad de condiciones para interpretar los estatutos.[11] Claro, ello no implica que podamos descartar libremente las conclusiones e interpretaciones de la agencia,[12] pues es norma reiterada que a toda determinación administrativa le cobija una presunción de regularidad y corrección.[13] Esta presunción, apuntalada en el conocimiento especializado de la agencia, debe respetarse mientras la parte que la impugne no produzca evidencia suficiente para derrotarla.[14]

Es decir, se presume que el organismo administrativo posee un conocimiento especializado en aquellos asuntos que le fueron encomendados por el legislador que merece ser visto con respeto y deferencia. Por ello, nuestra función revisora se circunscribe a evaluar la razonabilidad de la decisión recurrida, a la luz de las pautas trazadas por el legislador y el criterio de evidencia sustancial.[15]

B.

La Ley Núm. 26 de 29 de abril de 2017, *Ley de Cumplimiento con el Plan Fiscal,*[16] según enmendada, prescribe en el Artículo 2.09 (1) lo concerniente a la remuneración del trabajo en exceso a la jornada laboral. A esos efectos dispone expresamente que:

> [E]l programa de trabajo de cada agencia o instrumentalidad pública se formulará de tal manera

---

[10] *Capó,* 204 DPR, pág. 591; *Torres,* 196 DPR, pág. 627; *Ifco Recycling,* 184 DPR, pág. 744.
[11] 3 LPRA § 9675.
[12] *Batista,* 185 DPR, pág. 217.
[13] *Capó,* 204 DPR, pág. 591; *Torres,* 196 DPR, pág. 627; *Batista,* 185 DPR, pág. 217; *Ifco Recycling,* 84 DPR, pág. 744.
[14] *Torres,* 196 DPR, pág. 626; *Trigo Margarida* v. *Junta Directores,* 187 DPR 384, 393-394 (2012); *Batista,* 185 DPR pág. 215; *Ifco Recycling,* 184 DPR, pág. 744.
[15] *Batista,* 185 DPR, pág. 216; *Accumail P.R.* v. *Junta Sub. AAA,* 170 DPR 821, 829 (2007); *Otero* v. *Toyota,* 163 DPR 716, 729 (2005); *Pacheco* v. *Estancias,* 160 DPR 409, 432 (2003).
[16] 3 LPRA § 9461 *et seq.*

que se reduzca al mínimo la necesidad de trabajo en exceso de jornada regular establecida en la agencia o instrumentalidad pública para los empleados. No obstante, por razón de la naturaleza especial de los servicios a prestarse, la necesidad de los servicios para proteger y preservar la vida y propiedad de los ciudadanos, por cualquier situación de emergencia, por eventos de fuerza mayor, disturbios atmosféricos, situaciones imprevistas o de mantenimiento necesarias para dar continuidad a un servicio esencial, se podrá requerir a los empleados que presten servicios en exceso de su jornada de trabajo, diaria o semanal, o en cualquier día en que se suspendan los servicios sin cargo a licencia por el Gobernador. **En estos casos, deberá mediar una autorización previa del supervisor del empleado, la cual deberá ser aprobada por la autoridad nominadora o por aquel funcionario en quien éste delegue.** Los supervisores deberán tomar medidas para que cuando un empleado permanezca trabajando sea siempre a virtud de una autorización expresa.

[…].[17]

### C.

Por otro lado, la Ley Núm. 5 de 11 de mayo de 1959,[18] creó la Autoridad Metropolitana de Autobuses (AMA) que constituye la corporación e instrumentalidad gubernamental cuya principal gestión es "desarrollar y mejorar, poseer, funcionar y administrar cualesquiera tipos de facilidades de transporte terrestre de pasajeros y servicio, en y por el territorio que comprenda la capital de Puerto Rico y el área metropolitana".[19] Posteriormente, la AMA promulgó el Reglamento de Personal de la Autoridad Metropolitana de Autobuses, Reglamento Núm. 5427 (Reglamento 5427), de 13 de mayo de 1996, donde estableció las normas aplicables a sus empleados.[20]

En específico, el Artículo 16.4(a) del Reglamento 5427, sobre trabajo en tiempo extraordinario, dispone que:

[P]or razón de la naturaleza especial de los servicios a prestarse o por cualquier situación de emergencia, el supervisor podrá requerir a sus empleados que presten servicios en exceso de su jornada de trabajo, diaria o semanal durante los días feriados a que tenga derecho. **En estos casos deberá mediar una autorización previa, por escrito, del supervisor del empleado, la**

---

[17] Íd., § 9478 (1). Énfasis nuestro.
[18] 23 LPRA § 601 *et seq.*
[19] 29 LPRA § 606.
[20] Arts.1 y 2, Reglamento Núm. 5427.

**cual deberá ser aprobada por el Presidente de la Autoridad**.[21]

El 30 de marzo de 2021, la Sra. Karen A. Correa Pomales, Presidenta y Gerente General circuló una misiva a los vicepresidentes, oficiales ejecutivos y directores titulada *Directriz sobre horas extras o tiempo extraordinario de empleados*, Directriz AMA-2021-03. De dicha misiva se desprende lo siguiente:

> [E]fectivo de inmediato, el procedimiento a utilizarse para entregar los documentos relacionados a las horas extra o tiempo extraordinario de los empleados es el siguiente:
> Los documentos de horas extras o tiempo extraordinario de empleados, debidamente autorizados por el Vicepresidente de Área, Oficial Ejecutivo o Director, **serán entregados a la Oficina de Presidencia, para su evaluación**.
> [...].

### III.

En su sustrato, el señor Vargas Román aduce que el Comité erró al validar su suspensión de empleo y sueldo por ausentarse a trabajar tiempo extra el viernes, 15 de abril de 2022. Su reclamo nos obliga a examinar si la AMA cumplió o no con el trámite reglamentario requerido para convocar válidamente a un empleado a trabajar tiempo extraordinario. Concluimos en la negativa, veamos porqué.

Conforme la Ley Núm. 26-2017, el Viernes Santo está incluido como día feriado para todos los empleados públicos. Ello así, los empleados convocados a laborar en dicha fecha se les deberá compensar a razón de tiempo extraordinario. Sin embargo, la propia Ley Núm. 26-2017, dispone que para solicitarle a un empleado que trabaje en un día feriado es necesario que medie una autorización previa del supervisor del empleado, la cual deberá ser aprobada por la autoridad nominadora o por aquel funcionario en quien éste delegue. Adicionalmente, la AMA promulgó el Reglamento 5427, el

---

[21] Énfasis nuestro.

cual prescribe que **deberá mediar una autorización previa, por escrito, del supervisor del empleado, la cual deberá ser aprobada por el Presidente de la Autoridad.**

Si bien es cierto que el 8 de abril de 2022, la Vicepresidenta de Programación Intermodal, la señora Cotto Cubero, le remitió una misiva al señor Vargas Román notificándole que se debía presentar a trabajar en su horario regular el 15 de abril de 2022, esta no cumplió con el trámite establecido en la Ley Núm. 26-2017 ni en el Reglamento 5427. Nótese que, aunque la notificación la envió la Vicepresidenta de su área de trabajo, la AMA no demostró que dicha notificación había sido previamente aprobada, por escrito, por la Presidenta.

La AMA propone, tal y como lo aceptó el Comité, admitir como una autorización expresa, por escrito, la Directriz AMA2021-03. Sin embargo, ésta dispone explícitamente que los documentos de horas extraordinarias debidamente autorizados por la Vicepresidenta de área, **serán entregados a la Oficina de Presidencia, para su evaluación**. La AMA no ha presentado prueba alguna que demuestre que la solicitud de trabajo en horas extra del señor Vargas Román fue evaluada por la Oficina de Presidencia.

A tenor con lo antes esbozado, erró el Comité al concluir que el requerimiento para que el señor Vargas Román se presentara el 15 de abril de 2022, a trabajar tiempo extraordinario fue uno acorde con la Ley Núm. 26-2017 y el Reglamento 5427. En tal sentido, no podemos sustentar la suspensión de empleo y sueldo del señor Vargas Román sostenida por el Comité. Procede ordenar a la AMA el pago del tiempo que éste estuvo afuera por razón de la suspensión de empleo y sueldo. En cuanto a los honorarios de abogado, se conceden a tenor con la Ley Núm. 402 de 12 de mayo de 1950, según

enmendada,[22] la cual reglamenta el cobro de honorarios en reclamaciones laborales y su jurisprudencia interpretativa.

IV.

Por los fundamentos antes expuestos, se *revoca* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[22] 32 LPRA § 3114-3117.